## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| RUE LA LA, INC.<br>20 Channel Center<br>Boston, MA  02210 | : <br>: <br>: | |
| Plaintiff, | : | |
| | : | Civil Action No. _____ |
| v. | : | |
| | : | |
| BROOKE A. CUNDIFF<br>1 Christopher Street<br>Apartment 12H<br>New York, NY  10014 | : <br>: <br>: <br>: | |
| Defendant. | : | |
| | : | |

---

## VERIFIED COMPLAINT

---

Plaintiff, Rue La La, Inc. ("Rue"), files this Verified Complaint against Defendant Brooke A. Cundiff ("Cundiff"), and in support thereof avers as follows:

### INTRODUCTION

1.      This Verified Complaint seeks injunctive relief against Rue's former employee, Brooke Cundiff, to prevent Cundiff from, directly or indirectly, (a) continuing employment with her new employer Gilt Groupe, Inc. ("Gilt"), (b) soliciting Rue's brand clients, members, and customers on behalf of Gilt, and (c) disclosing Rue's proprietary, confidential, and trade secret information to Gilt, all in violation of her employment agreement and the Massachusetts Trade Secrets Act.

2.      This Verified Complaint supports Rue's Motion for a Preliminary Injunction being filed this same date.

3.      Rue and Gilt, its largest competitor, are the two leading participants in the specialized, dynamic, and highly competitive membership-only, off-price, and limited time sale segment (hereinafter, the "'off price' segment") of the online retail sales industry.

4.      On October 27, 2010, Cundiff resigned from her position as the Director of Brand Management for Rue's Men's classification.

5.      Rue has now learned that shortly after her resignation Cundiff began employment with Gilt in a similar merchandising management position.

6.      While employed by Rue, Cundiff:

A.      was responsible for the management and operation of Rue's men's retail classification;

B.      had direct access to Rue's brand clients, business contacts, and customers and received specialized training regarding Rue's relationships with those brands, businesses, and customers; and

C.      had direct access to and knowledge of substantial confidential, proprietary, and trade secret information, including Rue's business plans, strategies, competitive analyses, brand relationships, sales and margin history, and product development information.

7.      Rue is now threatened with immediate and irreparable harm from Cundiff's employment with its largest competitor; Cundiff's exploitation of Rue's brand, business, and customer relationships to solicit for its largest competitor; and Cundiff's use of Rue's confidential, proprietary, and trade secret information for the benefit of its largest competitor.

8.      Cundiff's actions are in direct violation of her post-employment obligations to Rue under a valid and enforceable contract and are also in violation of the Massachusetts Trade Secrets Act.

9.      Through this Verified Complaint, Rue seeks injunctive relief and damages against Cundiff for:

A.    Cundiff's violation of her post-employment Obligations Agreement ("Agreement," attached as Exhibit A) with Rue; and

B.    Cundiff's violation or threatened violation of the Massachusetts Trade Secrets Act.

## PARTIES

10.    Plaintiff Rue La La, Inc., formerly known as Retail Convergence, Inc., is a citizen of the State of Delaware and the Commonwealth of Massachusetts.  It is a Delaware corporation and maintains its principal place of business at 20 Channel Center, Boston, Massachusetts 02210.  Rue has a number of wholly-owned subsidiary corporations, including SmartBargains, Inc., a Delaware corporation with its principal place of business at 20 Channel Center, Boston, Massachusetts 02210, and Retail Convergence.com, LP, a Delaware limited partnership with its principal place of business at 20 Channel Center, Boston, Massachusetts 02210.  Rue is a wholly-owned subsidiary of GSI Commerce, Inc.  GSI Commerce, Inc. is a citizen of the State of Delaware and the Commonwealth of Pennsylvania; it is a Delaware corporation with its principal place of business at 1075 First Avenue, King of Prussia, Pennsylvania.  (Rue, SmartBargains, Inc., Retail Convergence.com, LP, and GSI Commerce, Inc. are referred to collectively in this Verified Complaint as "Rue.")

11.    Defendant Brooke A. Cundiff, a former Rue employee and current Gilt employee, is a citizen of the State of New York, residing at 1 Christopher Street, Apartment 12H, New York, NY 10014.

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties.  The parties are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

3

13.     Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391(a)

because: (a) Cundiff agreed to exclusive jurisdiction within the District of Massachusetts; (b)

Cundiff consented to the personal jurisdiction of the District of Massachusetts; (c) Rue maintains

its principal place of business within the District of Massachusetts; and (d) the harm Cundiff is

causing Rue is occurring and will continue to occur within the District of Massachusetts.

## FACTUAL BACKGROUND

### Rue is in the Highly Competitive Business of "Off Price" Online Retailing

14.     Rue is a market leader in the "off price" segment of the online retail industry.

15.     The "off price" segment of the online retail industry is a specialized and

entrepreneurial sector of the retail market that is dominated by a handful of highly-competitive

participants, including Rue and Gilt.  The "off price" segment is unique and distinct from other

segments of the retail market, including the brick-and-mortar "full price" retail segment (with

participants such as Saks Fifth Avenue, Nordstrom, and Macy's), and the brick-and-mortar "off

price" retail sector (with participants such as T.J. Maxx and Marshall's).

16.     Gilt is Rue's largest competitor in the "off price" segment of the online retail

industry.

17.     Without limitation, Rue and Gilt compete to: (a) secure business relationships

with the same retail brands; (b) obtain the same limited-availability merchandise to offer for sale

to their members, and (c) sell their merchandise to the same customers in the online market.

18.      Rue offers its members the opportunity to purchase highly coveted retail

merchandise, including designer apparel for men, women, and children, through private, short-

duration sales presented online through RueLaLa.com, its proprietary online shopping portal.

RueLaLa.com also offers its members a variety of other product offerings, including travel experiences, services and local business products and offers.

19.     Rue realizes the majority of its revenue from the sale of "off price" merchandise. Rue's business relationships enable it to acquire limited-availability excess inventory and off-season merchandise from leading retail brands at a reduced cost.  Rue then offers this merchandise for sale to its members, typically at highly discounted prices.

20.     Like Rue, Gilt offers its members the opportunity to purchase highly coveted retail merchandise, including designer apparel for men, women, and children, through private, short-duration sales presented online through its proprietary online shopping portal.

21.     On information and belief, Gilt realizes the majority of its revenue from the sale of "off price" merchandise.  As is the case with Rue, Gilt's business relationships enable it to acquire limited-availability excess inventory and off-season merchandise from leading retail brands at a reduced cost.  Gilt then offers this merchandise for sale to its members, typically at highly discounted prices.

22.     A critical component of Rue's success in the "off price" segment  is its ability to consistently obtain from its brand clients the merchandise that Rue's customers want, when they want it, and at the right price point.

23.     To maintain its successful competitive position in the "off price" segment, Rue invests millions of dollars and thousands of work-hours annually to develop brand relationships, obtain market intelligence, design retail strategy, manage its supply chain, and differentiate its product portfolio from those of its competitors.

24.     Rue protects its significant investment in these areas by, among other things, treating the information and processes used to develop its brand relationships, obtain its market

intelligence, design its retail strategy, manage its supply chain, and differentiate its products as confidential, proprietary, and as trade secrets to prevent competitors from gaining an unfair competitive advantage by obtaining access to this information.

25.     The inadvertent or intentional disclosure of Rue's confidential, proprietary and trade secret information relating to its brand relationships, market intelligence, retail strategy, supply chain, sales and margin history, and product portfolio to Gilt, or the use of that information to solicit business for Gilt, could result in a competitive catastrophe.

26.     Cundiff was employed by Rue as the Director of Brand Management for its Men's classification, the Rue business division that specializes in partnering with men's retail brands; developing, ordering, and licensing men's retail apparel; and offering that apparel for sale to members through RueLaLa.com.

27.     Cundiff has substantial knowledge of Rue's confidential, proprietary, and trade secret information regarding the brand relationships, market intelligence, retail strategy, supply chain, sales and margin history, and product portfolio necessary for the competitive success of Rue's Men's classification.

28.     Cundiff also has substantial knowledge of Rue's confidential, proprietary, and trade secret information regarding the "full price" segment of the online retail market.  In fact, less than one month prior to her resignation, Cundiff met with Rue's Chief Executive Officer to discuss the details of Rue's confidential strategies and competitive analyses regarding the "full price" segment of the online retail market, including Rue's highly confidential strategy and analyses regarding its competitive position against Gilt in the "full price" segment.

29.     Rue's confidential, proprietary, and trade secret information relating to its Men's classification and relating to the "full price" segment of the online retail market is of particular

value to Gilt.  The men's segment of the industry is relatively undeveloped and is poised for

explosive growth.  For the 12-month period ending in May 2010, it has been reported that men's

purchases from "off price" segment online retailers grew by 50% and men spent an average of

50% more per transaction than women.  Clearly, any competitive advantage that Gilt may obtain

could result in a significant financial benefit to Gilt and result in a significant detriment to Rue.

30.      Gilt's interest in growing its position in the men's segment of the industry is well-

known.  For example, in October 2009, Gilt launched Gilt MAN, which it described in a press

release as "a dedicated entry point for male shoppers-curating a broad range of daily sales from

apparel and lifestyle items to gadgets and sporting gear."

31.      On information and belief, Gilt is currently working to develop a "full price"

Men's business classification that would offer products for sale to the general public.  Gilt's "full

price" Men's business will be interrelated with Gilt's core "off price" business in at least four

important respects:

      A.     First, Gilt's "full price" Men's business will require relationships
            and transactions with the same brand clients, business contacts,
            and customers as Gilt's core "off price" business;

      B.     Second, an existing brand client with whom Gilt has a "full price"
            relationship may provide Gilt with preferential access to its "off
            price" inventory, thereby providing Gilt with unique products for
            sale in the "off price" market;

      C.     Third, a new brand client with whom Gilt develops a "full price"
            relationship will become a potential client for Gilt's core "off
            price" business; and

      D.     Fourth, Gilt will be able to use its core "off price" business as a
            liquidation vehicle for unsold inventory from its "full price"
            business.

Therefore, the success or failure of Gilt's "full price" Men's business will depend highly on Gilt's ability to leverage the brand client, business, and customer relationships developed in its core "off price" business.

32.     Gilt has already taken steps to leverage its core "off price" business to develop a broader market appeal for its Men's classification.  In September 2010, Gilt launched Giltmanual.com, which it described in a press release as "a discovery engine for the best new brands as well as a resource for guys looking to develop and hone their own personal style offering smart, irreverent advice on style, grooming, etiquette, food, drink, and more."  Gilt has revealed, through press releases, that it views Giltmanual.com, which is not restricted to Gilt members, as "an essential component to building member engagement and driving sales."  To this end, the website contains thumbnail previews of products currently offered for sale to members through Gilt's online shopping portal, as well as direct links for Gilt members to purchase those products.  In an effort to build Gilt's male membership, Giltmanual.com also provides a targeted link for non-members to register for Gilt membership.

### Rue's Extraordinary Efforts to Protect Its Confidential and Trade Secret Information

33.     Due to the highly competitive nature of the "off price" segment of the online retail industry, Rue takes extraordinary steps to protect its confidential and proprietary information and trade secrets.

34.     Rue protects its confidential and proprietary information and trade secrets by, among other things, requiring its employees, as a condition of employment, to enter into covenants (a) not to compete with Rue for a reasonable period of time following their employment with Rue, (b) not to solicit Rue's brand clients and customers for a reasonable period

of time following their employment with Rue, and (c) not to disclose Rue's confidential, proprietary, and trade secret information.

35.     The combination of non-compete, non-solicit, and confidentiality covenants is expressly designed to protect Rue against three possible forms of unfair competition by its former employees who possess confidential, proprietary, and trade secret information: (a) post-employment activities with or on behalf of a direct competitor, subject to reasonable scope and temporal limitations; (b) the solicitation of Rue's brand clients, business contacts, and customers, also subject to reasonable scope and temporal limitations; and (c) the direct or indirect use, communication, or disclosure of Rue's confidential information.

36.     In exchange for executing the non-compete, non-solicit, and confidentiality covenants, Rue promises to provide and does provide its employees with access to its confidential and proprietary information, brand client, business contact, and customer relationships, and related corporate goodwill in which Rue has invested significant time, effort, and monies.

37.     Upon separation from employment with Rue, an employee's access to company information – including confidential and proprietary information and trade secrets – is immediately terminated.  A terminated employee is required to return any company-owned electronic equipment and is not entitled to retain any materials that may contain company information, including confidential and proprietary information and trade secrets.

38.     Rue takes additional and significant measures to protect its confidential, proprietary, and trade secret information, including setting up physical and electronic limitations on access to that information by non-employees.

39.     On information and belief, Gilt, like Rue, seeks to protect its confidential, proprietary, and trade secret information through the use and enforcement of very similar – if not more restrictive – non-compete, non-solicit, and confidentiality agreements and practices.

**Cundiff's Non-Disclosure, Non-Solicit, and Non-Compete Agreements with Rue**

40.     Rue offered Cundiff employment as the Director of Brand Management for the company's Men's classification on February 9, 2010.

41.     As a condition of her employment with Rue, Cundiff entered into the Obligations Agreement on February 12, 2010.  (See Ex. A.)

42.     Through the Agreement, Cundiff recognized that "all Confidential Information disclosed to or acquired by me is a valuable, special, and unique asset of the Company" and agreed that "I will hold such Confidential Information in trust for the Company's sole benefit." (See Ex. A, ¶ 1(a).)

43.     Accordingly, the confidentiality provisions of the Agreement specifically provide that, during Cundiff's employment and after her employment with Rue ends, she shall not use, disclose, or communicate, "all trade secrets, proprietary information, and other data and information, in any form, belonging to the Company or any of its clients, customers, consultants, licensees, licensors, dealers, or affiliates."  (See Ex. A, at App'x A.)

44.     In addition, the non-competition covenant in Cundiff's Agreement provides, in relevant part:

> I agree that the services to be rendered by me to the Company are special and unique.  In consideration for my employment with the Company and other good and valuable consideration, **I agree that, during the period commencing on the date of this Agreement and ending on the date that is one (1) year after the Term, I shall not . . . directly or indirectly engage in a Competitive Business**.  A "Competitive Business" is any entity, including a business unit within an entity, that sells or markets or proposes to sell or market (i) excess consumer product inventory for direct

sale to consumers through the Internet; or (ii) consumer product inventory on a limited time frame and/or membership only basis for direct sale to consumers through the internet.

(See Ex. A, ¶ 5 (emphasis added).)

45.     Furthermore, Cundiff agreed to the non-solicitation covenant in her Agreement, which provides, in part, that she shall not "directly or indirectly (a) solicit, divert or take away any of the customers or the business of the Company, existing at the time of my termination of my employment or other engagement with the Company."  (See Ex. A, ¶ 6.)

46.     Cundiff expressly agreed that it was fair and reasonable that the non-competition agreement did not have a geographic limitation: "Since the Company offers products for sale on the internet, its business is not restricted by geography and accordingly, I agree that it is fair and reasonable that the non-competition provisions of this Agreement have no geographic limitation." (See Ex. A, ¶ 5.)

47.     At the time she executed the Agreement, Cundiff acknowledged that she received "good and valuable consideration," including employment, compensation, and benefits, in return for signing the Agreement.  (See Ex. A at 1.)

48.     Rue would not have hired Cundiff had she not signed the Agreement.

49.     Furthermore, Cundiff was aware that her obligations to Rue under the Agreement remained in force during and after termination of employment.

50.     The restrictions in the Agreement do not impose restraints greater than necessary to protect Rue's legitimate business interests.

51.     The Agreement provides that it "shall be governed by, and construed in accordance with, the laws of the Commonwealth of Massachusetts, without regard to conflicts of laws principles thereof."  (See Ex. A, ¶ 9.2.)

## Cundiff's Employment with Rue

52.     Cundiff commenced employment with Rue on or about February 16, 2010, and was employed as the Director of Brand Management for Rue's Men's classification from the commencement of her employment through on or about November 3, 2010.

53.     Cundiff's employment with Rue was her first experience in the "off price" segment of the online retail sales industry.  Although Cundiff had previous experience in the broader retail market, she had never been employed by a participant in the "off price" segment.

54.     During her employment with Rue, Cundiff obtained proprietary, confidential, and trade secret information about the "off price" segment of the online retail industry, including Rue's brand relationships, market intelligence, retail strategy, supply chain, and product portfolio, that she would not have obtained but for her employment with Rue.

55.     In her position, Cundiff was responsible for the overall management of Rue's Men's classification.  Cundiff's specific responsibilities in her position included:

      a.   Developing the strategic vision for the Men's classification;

      b.   Identifying appropriate brand clients and sources of product supply;

      c.   Cultivating and building long-term relationships with key brand client executives;

      d.   Managing brand client accounts;

      e.   Overseeing and coordinating brand licenses; and

      f.   Collaborating with internal constituents to coordinate brand presentation on the RueLaLa.com shopping portal.

56.     Thus, Cundiff had direct access to Rue's brand client relationships and developed and maintained those relationships on behalf of Rue's Men's classification.  Many, if not all, of the brand clients with whom Cundiff developed and maintained relationships on behalf of Rue's

Men's classification sell both "full price" and "off price" merchandise to participants in all segments of the retail market.

57.     Cundiff was given direct access to Rue's proprietary, confidential, and trade secret information about brand relationships, market intelligence, retail strategy, projections, budgets, supply chain, sales and margin history, member retention and acquisition strategies, inventory liquidation methods, and product portfolio. This information directly addressed Rue's position (a) in the "off price" segment of the online retail industry, (b) in the broader online retail market, and (c) against its largest competitor, Gilt.

58.     Cundiff was given substantial training on Rue's proprietary and confidential business strategies, including brand acquisition, brand management, brand negotiation, pricing, sourcing, marketing, and innovation. This training directly addressed Rue's strategies regarding (a) the "off price" segment of the online retail industry, (b) the broader online retail market, and (c) its largest competitor, Gilt.

59.     Cundiff was given substantial training on Rue's proprietary and confidential competitive analyses, including brand and product differentiation and Rue's efforts to provide a superior retail experience for its brand clients and members. This training directly addressed Rue's analyses regarding (a) the "off price" segment of the online retail industry, (b) the broader online retail market, and (c) its largest competitor, Gilt.

60.     Cundiff was also given direct access to Rue's confidential and proprietary information, strategies, and analyses regarding plans for possible (a) entry into the "full price" segment of the online retail industry and the broader online retail market, and (b) competition with Gilt in the "full price" segment of the online retail industry and the broader online retail market.

**Cundiff's Resignation from Rue and**
**Violation of Contractual Obligations and Duties to Rue**

61.     On or about October 27, 2010, Cundiff abruptly resigned from Rue.

62.     Cundiff's last day of employment with Rue was on or about November 3, 2010.

63.     Following Cundiff's resignation, Rue learned that Cundiff had received and accepted an offer of employment with Rue's direct competitor, Gilt.

64.     On information and belief, Cundiff has already started working in an unknown position for Gilt's planned "full price" Men's business.

65.     Cundiff's employment within Gilt's planned "full price" Men's classification violates Cundiff's contractual and legal post-employment obligations under her Agreement and the Massachusetts Trade Secrets Act.

66.     On information and belief, Cundiff cannot work as an employee within Gilt's planned "full price" men's classification without (a) competing with Rue, in violation of her Agreement, (b) soliciting Rue's "off price" brand clients, business contacts, and customers, in violation of her Agreement, or (c) using, disclosing, or communicating Rue's proprietary and confidential information and trade secrets, in violation of her Agreement and the Massachusetts Trade Secrets Act.

67.     Because Gilt's "full price" business is, on information and belief, interrelated with and essential to the continued success of Gilt's core "off price" business, Cundiff's employment with Gilt places her in direct competition with Rue.

68.     On information and belief, Cundiff's employment within Gilt's planned "full price" Men's classification will allow Cundiff to leverage her relationships with Rue's "off price" brand clients, business contacts, and customers to provide an unfair competitive advantage for Gilt's core "off price" business.

69.     On information and belief, Cundiff's employment within Gilt's planned "full price" Men's classification will also allow Cundiff to leverage her substantial knowledge of Rue's confidential, proprietary, and trade secret information to provide an unfair competitive advantage for Gilt's core "off price" business.

70.     On information and belief, Cundiff stands to receive significant economic benefit if Gilt is successful in improving its competitive position in the Men's "off price" segment of the online retail industry.

71.     Cundiff's conduct, if unrestrained, will cause direct and irreparable harm to Rue in its business by, among other things, loss of market share, profits, goodwill, reputation, and the benefit of its bargain with Cundiff.

## COUNT I
## BREACH OF CONTRACT

72.     Rue incorporates every allegation set forth above as if fully set forth herein.

73.     The Agreement between Cundiff and Rue is valid and enforceable.

74.     Cundiff is contractually prohibited by her non-disclosure covenant from using, disclosing, or communicating any confidential information obtained during her employment with Rue, including, without limitation, trade secrets, proprietary information, and other data and information, in any form, belonging to Rue or any of its clients, customers, consultants, licensees, licensors, dealers, or affiliates.

75.     Cundiff is contractually prohibited by her non-solicit covenant from directly or indirectly soliciting, diverting, or taking away any of Rue's brand clients, business contacts, or customers existing at the time of the termination of her employment with Rue, for a period of one year after the termination of her employment with Rue.

15

76.     Cundiff is contractually prohibited by her non-compete covenant from directly or indirectly engaging in a competitive business, including any entity or business unit within an entity that sells or markets or proposes to sell or market (i) excess consumer product inventory for direct sale to consumers through the Internet, or (ii) consumer product inventory on a limited time frame and/or membership only basis for direct sale to consumers through the Internet, for a period of one year after the termination of her employment with Rue.

77.     On information and belief, Cundiff has breached, or will inevitably breach, her non-disclosure covenant in her new job position with Gilt by using, disclosing, or communicating proprietary, confidential, and trade secret and obtained during her employment with Rue.

78.     On information and belief, Cundiff has breached, or will inevitably breach, her non-solicit covenant in her new position with Gilt because, in her new position she has or will solicit, divert or take away Rue's brand clients, business contacts, and customers existing at the time Cundiff terminated employment with Rue.

79.     On information and belief, Cundiff has breached, or will inevitably breach, her non-compete covenant in her new job position because Gilt is a business entity that sells or markets or proposes to sell or market (i) excess consumer product inventory for direct sale to consumers through the Internet, and/or (ii) consumer product inventory on a limited time frame and/or membership only basis for direct sale to consumers through the Internet.

80.     Rue has suffered, or will suffer, irreparable damage by Cundiff's unlawful activities.  Moreover, Cundiff's activities will continue to cause Rue irreparable harm unless the relief requested herein, and in the Motion for Preliminary Injunction Rue is filing this same date, is granted.

81.     Cundiff's breaches of contract are and will be a direct and proximate cause of Rue's irreparable harm.

82.     All conditions precedent to the relief requested herein have been performed, have occurred, or have been waived.

83.     The equities are with Rue and against Cundiff.

84.     The public interests are served by ordering the relief sought by Rue.

85.     Rue has no adequate remedy at law.

86.     Cundiff's acts alleged herein were performed without the consent of Rue.

87.     Rue has suffered damages by Cundiff's unlawful activities.

WHEREFORE, Rue demands judgment in its favor and against Cundiff:

   A.     For equitable relief, including, but not limited to a preliminary and permanent injunction, restraining and enjoining Cundiff from violating and continuing to violate her Agreement with Rue;

   B.     For actual damages that Rue is entitled to recover as a result of Cundiff's breach of her Agreement with Rue;

   C.     For incidental and consequential damages as permitted by law; and

   D.     For all such other relief as this Court deems appropriate.

## COUNT II
## VIOLATION OF THE MASSACHUSETTS TRADE SECRETS ACT

88.     Rue incorporates every allegation set forth above as if fully set forth herein.

89.     Cundiff is in possession of trade secrets of Rue.

90.     Cundiff has unlawfully taken, received, concealed, assigned, leased, pledged, copied, or otherwise used or disposed of trade secrets of Rue, without express or implied consent for the benefit of herself and Rue's direct competitor, Gilt.

91.     Cundiff has unlawfully converted trade secrets of Rue, for the benefit of herself and Rue's direct competitor, Gilt in violation of the written terms of the Agreement.

WHEREFORE, Rue demands judgment in its favor and against Cundiff:

A.     For equitable relief, including, but not limited to a preliminary and permanent injunction, restraining and enjoining Cundiff from taking, receiving, concealing, assigning, leasing, pledging, copying, or otherwise using or disposing of trade secrets of Rue; and

B.     For all such other relief as this Court deems appropriate.

Dated:  November 23, 2010.                    Respectfully submitted,

/s/ Jeffrey M. Rosin
Jeffrey M. Rosin
**CONSTANGY BROOKS & SMITH LLP**
535 Boylston Street
Suite 902
Boston, MA 02116
Phone:  (617) 849-7880
Fax: (617) 849-7870
jrosin@constangy.com

Donald Gamburg (*pro hac vice to be filed*)
Jennifer Hale-Eagland (*pro hac vice to be filed*)
Frederick G. Sandstrom (*pro hac vice to be filed*)
**BLANK ROME LLP**
One Logan Square
Philadelphia, PA 19103
Phone:  (215) 569-5330/5679
Fax:  (215) 832-5330/5679
gamburg@blankrome.com
haleeagland@blankrome.com
sandstrom@blankrome.com

*Attorneys for Plaintiff Rue La La, Inc.*

**VERIFICATION**

Edward M. McNamara, being duly sworn, deposes and states as follows:

I am the Chief Financial Officer of Rue La La, Inc., the plaintiff in this action. I have read the foregoing Verified Complaint, and I attest pursuant to 28 U.S.C. § 1746 that the information therein is true and correct to the best of my knowledge, information, and belief, based upon my personal knowledge and my review of documents.

Dated: November 23, 2010

Edward M. McNamara

19

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on November 23, 2010, a true and correct copy of the

foregoing Verified Complaint was sent via Federal Express, overnight delivery, to Defendant

Brooke Cundiff, 1 Christopher Street, Apt. 12H, New York, New York 10014.

/s/ Jeffrey M. Rosin

Jeffrey M. Rosin
